IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PHILLIP RAY HARKLESS, #266580,    )
    )
      Plaintiff,    )
    )
    v.    )    CASE NO. 2:10-CV-666-TMH
    )    [WO]
LOUIS BOYD, *et al.*,    )
    )
      Defendants.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Phillip Ray Harkless ["Harkless"], an indigent state inmate, challenging the adequacy of medical treatment provided to him for sleep apnea during his incarceration at the Easterling Correctional Facility. *Complaint - Doc. No. 1* at 3.  Harkless names Louis Boyd, the warden of Easterling, Dr. Jean Darbouze, the attending prison physician, and Kathy Olbeter and Kay Wilson, medical personnel employed at Easterling, as defendants in this cause of action.[1]  Harkless seeks monetary damages for the alleged violations of his constitutional rights. *Id.* at 4.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Harkless's claims for relief.  Pursuant

---

[1] In the complaint, Harkless improperly identifies Kay Wilson as Ms. Willison.  Harkless does not dispute this misidentification and the court will therefore refer to this defendant by her proper name.

to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment. *Order of September 30, 2010 - Doc. No. 20*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings,

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless

3

a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motions for summary judgment, Harkless is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v.*

4

*Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing

5

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Harkless fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent Harkless sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Warden Louis Boyd

7

It is clear from the complaint that Harkless seeks to hold defendant Boyd liable for

his failure to intervene regarding the medical treatment provided by health care professionals.

*Complaint - Doc. No. 1* at 3.  The claim made against defendant Boyd entitles Harkless to

no relief as

> [t]he law does not impose upon correctional officials a duty to
> directly supervise health care personnel, to set treatment policy
> for the medical staff or to intervene in treatment decisions where
> they have no actual knowledge that intervention is necessary to
> prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550
> F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be
> brought against managing officers of a prison absent allegations
> that they were personally connected with the alleged denial of
> treatment). Moreover, "supervisory [correctional] officials are
> entitled to rely on medical judgments made by medical
> professionals responsible for prisoner care. *See, e.g., Durmer v.
> O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849
> F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County,
> Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Harkless seeks relief from defendant Boyd for the course of treatment

undertaken by prison medical personnel due to Boyd's position as warden of Easterling,

assuming *arguendo* Boyd exerted some authority over the manner in which those persons

responsible for the provision of medical treatment rendered such treatment, the law is well

settled "that Government officials may not be held liable for the unconstitutional conduct of

their subordinates under the theory of *respondeat superior* [or vicarious liability] . . . .

*Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public

officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Harkless could attach to defendant Boyd only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the

alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Harkless, however, has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the allegation of deliberate indifference by defendant Boyd. The record is devoid of evidence indicating that Boyd personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Harkless during his confinement at Easterling; rather, it is undisputed that Boyd did not participate in the provision of treatment to Harkless. The evidentiary materials before the likewise court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Harkless and that they provided treatment to Harkless in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendant Boyd can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Harkless' constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Boyd, Harkless must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Boyd] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them

10

from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Harkless has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Boyd directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Harkless has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Boyd failed to take corrective action; instead, the undisputed medical records indicate that Harkless had continuous access to medical personnel and received treatment for his condition.  Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by Boyd.  Thus, the requisite causal connection does not exist in this case and liability does not attach to Boyd under the custom or policy standard as such is not warranted.  *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Summary judgment is therefore due to be granted in favor of defendant Boyd on the claim lodged against him.

### C.  The Medical Defendants

Harkless asserts that during a previous incarceration at Easterling medical personnel provided inadequate treatment for his sleep apnea.  *Complaint - Doc. No. 1* at 3.  Specifically, Harkless argues that upon his transfer to Easterling in July of 2010 the medical defendants

11

did not immediately provide him access to a CPAP machine.  *Id*.  Defendants Darbouze, Olbeter and Wilson adamantly deny they acted with deliberate indifference to Harkless' medical needs and, instead, maintain that Harkless received appropriate treatment for his sleep apnea.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious

harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n.28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show:  (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of

symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of

14

treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9 (2002); *Mann*, 588 F.3d at 1307.

15

Initially, the court notes that Harkless presents no verifiable medical evidence which indicates his sleep apnea warranted use of a CPAP machine at the time of his transfer to Eastlering in July of 2010; rather, the undisputed medical records, including a statement provided by Harkless to medical personnel at the Kilby Correctional Facility on June 24, 2010. demonstrate that he had not utilized a CPAP machine in over two years prior to his incarceration at Easterling. *Medical Defendants' Exhibit A (Part I of Medical Records) - Doc. No. 11-3* at 35 ("[Patient referred to chronic care [for monitoring of hypertension]. Also reports previously on CPAP however has not used CPAP in > 2 years."). In addition, the record is devoid of evidence that Harkless' sleep apnea worsened during the time required to obtain a CPAP machine. Finally, valid reasons supported the delay in providing Harkless use of a CPAP machine. First, it is undisputed that the defendants did not have access to a CPAP machine suitable for use by Harkless when he first arrived at Easterling. Upon the initial request regarding the need for a CPAP machine made by Harkless on July 16, 2010, *Medical Defendants' Exhibit A (Part I of Medical Records) - Doc. No. 11-3* at 27, Dr. Darbouze immediately prepared a consultation request seeking approval for requisition of a CPAP machine for use by Harkless. *Id*. Second, a sleep study report was necessary to the provision of a CPAP machine which would meet the specific needs associated with Harkless' sleep apnea. Dr. Darbouze therefore undertook measures to obtain the report from a previous sleep study prepared on Harkless so that the CPAP machine requisitioned for him could be calibrated to his specific needs. *Medical Defendants' Exhibit 1 (Affidavit of Dr.*

16

*Jean Darbouze) - Doc. No. 11-1* at 2.  The medical defendants did not receive the requisite

sleep study report until the afternoon of August 12, 2010.  Thus, any delay in providing a

CPAP machine to Harkless occurred due to the defendants efforts to ensure that the CPAP

machine they acquired comported with the parameters of Harkless' condition.

The affidavits filed by the defendants address the allegations made by Harkless.  A

thorough review of the evidentiary materials filed in this case demonstrates that these

affidavits are corroborated by the objective medical records compiled contemporaneously

with the treatment provided to Harkless regarding the instant claim of deliberate indifference.

Dr. Darbouze provides the following detailed explanation of the treatment afforded Harkless.

> After Mr. Harkless was transferred from Kilby Correctional Facility to
> Easterling, he underwent the initial medical screening conducted by a member
> of the Easterling medical staff on July 6, 2010.  At that time, Mr. Harkless
> indicated that he had been previously diagnosed with chronic obstructive sleep
> apnea, though the copy of the medical records provided upon his transfer, did
> not include any . . . documents confirming this diagnosis.  I did, however,
> identify documentation from Kilby Correctional Facility on June 24, 2010, in
> which the medical staff at Kilby noted that Mr. Harkless informed them that
> he had previously used a C-PAP machine, however, he had "not used CPAP
> in [more than] 2 years."  Additionally, nothing in Mr. Harkless's medical
> records indicated that he used the C-PAP machine during his incarceration at
> Childersburg Community Work Center [while there from April 20, 2010 until
> his transfer to Kilby on June 24, 2010] prior to his incarceration at Eastlering
> [on July 6, 2010].  Therefore, Mr. Harkless's medical records suggested that
> he had gone some period of time without utilizing a C-PAP machine.
>     In order to avoid any unnecessary delay in providing the C-PAP macine
> to Mr. Harkless, I began the process for the requisition of a C-PAP machine
> for Mr. Harkless on July 16, 2010.  At that time, Mr. Harkless could not
> identify for us the medical facility where he had undergone a sleep study and,
> therefore, I asked the medical staff to investigate possible locations where he
> may have undergone a sleep study and to attempt to obtain a copy of Mr.

Harkless's prior sleep study results.  As with any specialty consultation of this nature, I was well aware that a great deal of time could be saved if we could obtain the results of Mr. Harkless's prior sleep study.  [In addition, it was necessary to obtain results from a sleep study so that the C-PAP machine ordered could be configured to meet the needs associated with Harkless's condition.]

In the meantime, Mr. Harkless failed to report for evaluation by the medical staff when summoned to the Easterling health care unit on July 23, 2010.  In a sick call request form dated July 28, 2010, Mr. Harkless requested the opportunity to see a member of the medical staff "to get some help . . .  I am struggling with sleeping/breathing;" however, we still had not yet received the results of Mr. Harkless's sleep study as of this date.

The following week, Mr. Harkless submitted a sick call request form complaining about his teeth hurting and bleeding, but did not mention anything related to any problem sleeping, his sleep apnea or requesting a C-PAP machine.  In a sick call request form dated August 2, 2010, Mr. Harkless requested new soles for his shoes, a profile for boots, prostate and colon testing and pain in his groin, but did not mention any problems relative to his sleep apnea [either] in this sick call request form or when he was evaluated during sick call.  Mr. Harkless raised the issue regarding his sleep apnea or a C-PAP machine on August 10, 2010, when he submitted a sick call request form.

On August 12, 2010, the medical staff at Easterling finally received the sleep study records from East Alabama Medical Center.  Upon receipt of the sleep study, the medical staff at Easterling promptly ordered a C-PAP [machine] which met the requirements and specifications called for in Mr. Harkless's prior sleep study.   The medical staff was required to wait approximately one week before actually receiving the C-PAP machine which was configured to Mr. Harkless's specifications.

Mr. Harkless received a C-PAP machine for his use on August 19, 2010.  In an order dated August 19, 2010, I directed Mr. Harkless to report to the health care unit nightly at approximately 9:00 p.m. in order to sleep in the infirmary so that the medical staff could oversee his use of the C-PAP machine.  After using the C-PAP machine for approximately one week in the infirmary, Mr. Harkless was allowed to return to sleeping in Dorm F where he was then allowed to use the C-PAP machine.

Since August 19, 2010, I understand that Mr. Harkless has continually utilized the C-PAP machine.  [As of the present date,] [he] has not reported that the C-PAP machine is inoperative or otherwise not functioning as it was

designed and intended to operate [in treating his sleep apnea]. Mr. Harkless has submitted several sick call request forms since August 19, 2010, and I have seen him on a number of occasions. During these interactions with Mr. Harkless, he has not voiced any complaints to me about his C-PAP machine or mentioned anything to me which indicated that he required any further treatment regarding his sleep apnea.

I did not inform Mr. Harkless that the medical staff at Easterling could not obtain access to a C-PAP machine for him. During Mr. Harkless's incarceration at Easterling, I did not at any time ignore any of his requests for medical treatment. I did not deliberately ignore any of Mr. Harkless's medical complaints or interfere in any way with the provision of medical care to Mr. Harkless at any time. I have not taken any action which has caused Mr. Harkless to experience any unnecessary pain and/or suffering. While I understand that Mr. Harkless has very strong feelings regarding the medical treatment he believes he should receive related to his sleep apnea, it is my opinion based upon my medical training, education and experience that the medical staff at Easterling diligently addressed his condition in a timely and medically-appropriate fashion.

*Medical Defendants' Exhibit 1 (Affidavit of Dr. Jean Darbouze) - Doc. No. 11-1* at 2-4

(citations to medical records omitted).

The affidavit filed by Kay Wilson, a registered nurse and the health services administrator for Easterling, describes the situation surrounding acquisition of a CPAP machine for use by Harkless as follows:

After Mr. Harkless's arrival at Easterling in July of 2010, I learned that [this inmate] had informed the medical staff that he had previously been diagnosed with sleep apnea. However, at the time that we received this information from Mr. Harkless, we did not have any documentation in his current medical records such as a report known as a "sleep study" confirming this diagnosis. After concluding some research and contacting various medical personnel within the ADOC system and . . . some outside medical providers, we eventually identified the medical facility where [Harkless] participated in a sleep study and we promptly requested a copy of his medical records from East Alabama Medical Center. Soon after requesting these records, they were

received via facsimile at Easterling.  As indicated on the fax line on the top of these records, the medical staff did not actually receive the results of Mr. Harkless's prior sleep study until approximately 1:35 p.m. on August 12, 2010.

After receiving the sleep study records from East Alabama Medical Center, we ordered a C-PAP machine for Mr. Harkless.  The medical staff received the C-PAP machine within a week of submitting the order.  The C-PAP machine arrived at Easterling on August 19, 2010 . . . .  After the medical staff obtained the C-PAP machine for Mr. Harkless, Mr. Harkless was required to report to the infirmary for approximately one week for the medical staff to oversee his use of the C-PAP machine and to ensure that Mr. Harkless was using the machine and using it correctly.

When I first notified Mr. Harkless that the C-PAP machine had arrived, Mr. Harkless refused to accept it, stating that he wanted the C-PAP machine he previously used at home prior to his incarceration.  After some discussion, he agreed to accept the new C-PAP machine that was configured to his specifications.  After using the C-PAP machine for approximately one week in the infirmary, Mr. Harkless was moved back to Dorm F where he was then allowed to use the C-PAP machine on his own.  Since August 19, 2010, Mr. Harkless has continually utilized the C-PAP machine provided by the medical staff.  He has not reported any problems regarding the C-PAP machine to me.

*Medical Defendants' Exhibit 2 (Affidavit of Kay Wilson) - Doc. No. 11-2* at 1-2 (citations to

medical records omitted).

Under the circumstances of this case, the court concludes that the course of treatment

undertaken by the medical defendants in addressing Harkless' complaints regarding his sleep

apnea did not violate his constitutional rights.  The medical care Harkless received was

certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience

or to be intolerable to the fundamental fairness."  *Harris*, 941 F.2d at 1505.  The allegations

presented by Harkless simply fail to establish deliberate indifference by the medical

defendants.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which

20

condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-46 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence' . . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Harkless received medical care for his condition.  It is likewise evident that the medical defendants rendered treatment to Harkless in accordance with their professional judgment.  Moreover, Harkless has failed to present any evidence which indicates that the medical defendants knew that the manner in which they provided treatment created a substantial risk to Harkless' health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Harkless' medical needs.  Consequently, summary judgment is due to be granted in favor of Dr. Jean Darbouze, Kathy Olbeter and Kay Wilson.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

21

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  This case be dismissed with prejudice; and

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **May 31, 2013**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 17th day of May, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE